UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DR. BRIAN SALVATORE** | **CIVIL ACTION NO. 3:24-CV-270** |
| **VERSUS** | |
| | **JUDGE** _____ |
| **ROBERT SMITH IN HIS OFFICIAL CAPACITY AS CHANCELLOR OF LOUISIANA STATE UNIVERSITY ("LSU-S") AND CARLTON (TREY) JONES IN HIS OFFICIAL CAPACITY AS DEPUTY GENERAL COUNSEL FOR LSU-S** | |
| | **MAGISTRATE JUDGE** _____ |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF**

**MAY IT PLEASE THE COURT:**

**Exhaustion of Administrative Remedies is not Required**

In *Creel v. City of Baton Rouge*, 2021 U.S. Dist. LEXIS 43203 (M. D. La 2021), this Court held:

> "The Court has subject matter jurisdiction over the First Amendment and Fourth Amendment constitutional claims asserted by Plaintiff. Redress for civil rights violations pursuant to 42 U.S.C. § 1983 does not require exhaustion of state law remedies or procedures. In Patsy v. Board of Regents, the Supreme Court categorically rejected any such impediment to bringing a Section 1983 suit. The Court found that imposing an exhaustion requirement would be inconsistent with Congress' intent in enacting section 1983, i.e., protecting individuals' basic federal rights against incursions by state power. Where a plaintiff can successfully prove, by a clear and substantial likelihood of success on the merits, that a person acting under color of law deprived him of a right guaranteed by the Constitution or laws of the United States, the plaintiff need not demonstrate exhaustion of administrative remedies as federal law imposes no such requirement, and overlapping state remedies are generally irrelevant to the question of whether a cause of action exists under section 1983.

The Fifth Circuit and the Supreme Court have held that: "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v.*

*Burns* 427 U. S. 347 347 (1976). *See also Smith v. Matthews*, 2010 U.S. Dist. LEXIS 19897 (S. D. 1/20/10) (granting motion for injunction where professor-plaintiff had been prevented from speaking at defendant-school's Board of Trustees meetings and enjoining defendants from excluding members of the public from speaking during public comment portion on relevant matters based on viewpoint).

In *Southern Ohio Coal Company v. Office of Surface Mining, Reclamation and Enforcement*, 20F.3d 1418 (6 Cir. 1994) the Cout held that:

> "We have stated that exhaustion of administrative remedies may not be required in cases of constitutional challenges to an agency's procedures. *Southern Ohio Coal Co. v. Donovan*, 774 F. 2d 693, 702 (6th Cir. 1985), amended by, 781 F. 2d 57 (6th Cir. 1986). In the Fifth Circuit, 'an assertion of a constitutional right …not transparently frivolous…gives the District Court jurisdiction to hear an attack on an interlocutory agency order.' *Coca-Cola Co. v. Federal Trade Commission,* 475 F. 2d 299, 303 (5th Cir.) (quoting *Fay v. Douds*, 172 F. 2d 720 (2d Cir. 1949)), cert. denied, 414 U. S. 877 (1973). "

In *van Heerden v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College*, 2011 U. S. Dist. LEXIS 121414 (M. D. La., 2011), this Court held:

> "To establish a § 1983 claim for retaliation related to First Amendment speech, plaintiffs must prove four elements: (1) plaintiff suffered an adverse employment action; (2) plaintiff spoke as a citizen on a matter of public concern; (3) plaintiff's interest in the speech outweighed the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action. *Nixon v. City of Houston,* 511 F.3d 494, 497 (5th Cir. 2007). To establish the last element of causation, the plaintiff must show his protected speech '":"was a motivating factor behind the defendant's action." *Brady v. Houston Ind. Sch. Dist*., 113 F.3d 1419, 1423 (5th Cir. 1997). "

In *van Heerden*, this Court, the late Judge James Brady presiding, observed that" …. academic freedom …generally been understood to protect and foster the independent and uninhibited exchange of ideas among teachers and students in the serious pursuit of scholarship among members of the academy." *Id*. at page 6. Judge Brady went out to echo justice Souter's concern as to the "whittling-away of potential academics' ability to delve into issues or express opinion that are unpopular, uncomfortable or unorthodox.' *Id*. at 6. The Judge added: "… the Court

cannot close its eyes to the evidence on record suggesting van Heerden's non-renewal could have been based on retaliatory motives." *Id* at 9.

### ***The Defendants Are Retaliating Against the Plaintiff For Exercising His First Amendment Rights***

Dr. Salvatore's complaint, with exhibits, clearly demonstrate that the Defendants are seeking to terminate his tenured employment in retaliation for his exercise of expressional rights.

The threatened injury to the Plaintiff outweighs any damage an injunction might cause to the Defendants. As noted by the Fifth Circuit in *Vergie Lee Valley v. Rapides Parish School Board*, 118 F.3d 1047 (5th Cir. 1997), at 1056 injunctive relief "would not visit any substantial harm on the school board, and indeed far greater harm to both Cox and entire school system would result from allowing the unconstitutional [termination] to stand." Likewise, ordering the Defendants to comply with procedural due process and statutory requirements would not substantially harm LSU. Far greater harm to all parties would result from allowing the unconstitutional termination proceeding to go forward as planned by the Defendants. Moreover, there would be no substantial harm to LSU. would result by a grant of injunctive relief designed to prohibit violations of due process and any further chill on plaintiff's and other faculty members free speech rights.

Similarly, there will be no harm to the public interest by granting an injunction in this case. See *Valley v. Rapides Parish School Bd.*, supra. As the Fifth Circuit observed in *Wilson v. Thompson,* 593 F.2d 1375, 1383 (5th Cir.1979), the state, by definition, does not have any legitimate interest in pursuing a bad faith penal proceeding designed to retaliate for or to deter the exercise of constitutional rights.

It is axiomatic that First Amendment rights are of paramount importance in the United States. ("[T]he central purpose of the Speech and Press Clauses was to assure a society in which 'uninhibited, robust, and wide-open' public debate concerning matters of public interest would

thrive, for only in such a society can a healthy representative democracy flourish." (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964))). This is particularly so on college campuses where robust expression and free exchange of ideas, opinions, and thought are vital to educational systems. See *Maples v. Martin*, 858 F.3d 1546, 1553 (11th Cir. 1988), holding that professors "whose speech directly affects the public's perception of the quality of education in a given academic system find their speech protected." There is no legitimate state interest in retaliating against a college professor for his or her exercising expressional rights, or in seeking to terminate tenured professors in violation of their procedural due process protections.

Unless and until plaintiff is provided with adequate and legal notice, which includes specific details, and which limit the scope of the hearing, as well as a fair and impartial hearing and triers of fact, and a reasonably scheduled hearing, plaintiff will suffer immediate and irreparable injury, loss, harm and damage to his reputation and standing in the educational, scholarly and associative communities and broader community, to his continued employment and his ability to be effective in his present position, to be free of a hostile workplace and educational environment, as well as to secure future employment commensurate with his good reputation, education and experience, as well as suffering a chilling effect to his ability to freely speak and thereby exercise his First Amendment rights. Therefore, plaintiff is entitled to a temporary restraining order and thereafter a preliminary and permanent injunction, enjoining the Defendants as outlined in and prayed for in the Complaint.

***Defendants' Repeated Refusals to Provide Due Process and Statutorily Required Notice***

As a tenured LSUS professor, plaintiff has a property right and interest in and to his continued employment, salary and position, which he cannot be deprived except by due process of law in accord with and guaranteed by the Fourteenth Amendment of the United States Constitution, as well as by Article 1, Section 2 of the Louisiana Constitution of 1974.

> It is settled that a tenured university professor possess a property interest deserving of procedural due process protections under the Fourteenth Amendment and Art. I § 2 of the Louisiana Constitution. <u>Odynocki v. Southern University at New Orleans</u>, 2006 WL 3230348 (E.D.La. 2006); <u>Hicks v. Stone</u>, 425 So.2d 807 (La.App. 1 Cir. 1982); <u>Tonkovich v. Kansas Bd. of Regents</u>, 159 F.3d 504 (10th Cir. 1998).

See also <u>Jones v. Southern University and A & M College System</u>, 96-1430 (La.App.1 Cir. 5/9/97), 693 So.2d 1265, 1269; <u>Olivier v. Xavier University</u>, 533 So.2d 1004 (La.App. 4 Cir.1989), *writ denied*, 556 So.2d 1279 (La.1990); <u>Osborne v. Stone</u>, 536 So.2d 473, 475 (La.App. 1 Cir.1988), *writ denied*, 537 So.2d 1164 [(1989), *cert denied*, 493 U.S. 813 (1989)].

At the time of Dr. Salvatore's alleged offense, there was no policy in effect that prohibited his expressional activities. In fact, University policy encouraged free expression. An employee who has tenure may not be terminated unless he or she violates a rule or policy. See, *Lasserre v. Louisiana Public Service Commission*, 2004-0615 (La. 1 Cir. 4/28/05), 903 So. 2d 474, 479; *Howard v. West Baton Rouge Parish School Board*, 00-3234 (La. 6/29/01), 793 So. 2d 153; *West v. Tangipahoa Parish School Board*, 92-0026 (La. 1 Cir. 3/5/93), 615 So. 2d 979. Moreover, the pre-termination notice does not inform Dr. Salvatore of any law, rule or policy he may violated.

Procedural due process for a terminated professor includes the following:

> (1) being advised of the cause for his termination in sufficient detail so as to enable him to show any error that may exist;
>
> (2) being advised of the names and the nature of the testimony of the witnesses against him;
>
> (3) being provided a meaningful opportunity to be heard in his own defense within a reasonable time; and
>
> (4) being provided a hearing before a tribunal that possesses some academic expertise and an apparent impartiality toward the charges.

*Walsh v. Hodge*, 975 F.3d 475, 482 (5th Cir. 2020), citing *Levitt v. University of Texas at El Paso*, 759 F.2d 1224, 1228 (5th Cir. 1985).

In <u>Levitt v. University of Texas at El Paso</u>, *Supra,* and <u>Thompson v. Madison County Bd. of Ed.</u>, 476 F.2d 676 (1973), and <u>Ferguson v. Thomas</u>, 430 F.2d 852 (5th Cir.1970), the Fifth Circuit set forth the minimum elements of due process for tenured professors. In <u>Ferguson v, Thomas</u>, supra, the Fifth Circuit held that due process requires that a tenure hearing be set a reasonable time ***after*** a professor is provided specific written notice of the charges.

The state may determine the process by which legal rights are asserted and enforced, *so long as a party receives due notice* and an opportunity to be heard. <u>In re Dixon</u>, 960 So.2d 941 (La.App. 1 Cir. 2007); <u>Lott v. Department of Public Safety and Corrections, Office of Louisiana State Police</u>, 734 So.2d 617 (La.5/18/99). In *In Re Dixon, supra*, the Louisiana First Circuit held (at 946) that due process requires that "a person be informed of the charges against him; be given the opportunity to present evidence; be represented by counsel; be allowed to cross-examine witnesses against him; and be given the right of appeal."

"Due process requires greater protections when liberty interests are implicated as opposed to property interests." *Arrioia v. Orleans Parish School Board*, 2001-1878 (La. 2/26/02), 809 So.2d 932. The charges against the plaintiff are quite stigmatizing and clearly implicate the plaintiff's liberty interest.

With regard to an administrative hearing, the Fifth Circuit in <u>North Alabama Exp., Inc. v. U.S.</u>, 585 F.2d 783 (5th Cir. 1978) held that:

> Failure to provide adequate notice is a jurisdictional defect that invalidates administrative action until the defect is cured.

See also <u>Intercontinental Industries, Inc. v. American Stock Exchange</u>, 452 F.2d 935 (5th Cir. 1971). The Fifth Circuit also held in <u>C. I. R. v. West Production Co.</u>, 121 F.2d 9 (5th Cir. 1941):

> Even in administrative proceedings where the rules of procedure are relaxed, the party moved against has the right to be heard, the essence of which is to be fully advised of the allegations comprising the claim against him.

Pursuant to the provisions of LSA-R.S. 17:3101, et seq., LSU-S is an "institution of higher learning", and plaintiff is a "Member[s] of the faculty" of LSU-S. Plaintiff's proposed termination is governed by the provisions of LSA-R.S. 17:3101, et seq., and specifically, but not limited to, LSA-R.S. 17:3105, which provides, that the proposed termination of plaintiff is governed by the Louisiana Tenure Law (LSA-R.S. 17:441, et seq.) See also *Board of Regents v. The Board of Trustees for State Colleges and Universities*, 4(a) So.2d 399 (La.App. 1 Cir.1986); *In re Dixon, supra*.

LSA-R.S. 17:443 requires written and signed charges, which must include a complete and detailed list of the specific reasons for such charges, including, but not be limited to the date and place of the alleged offense or offenses, names of individuals involved in or witnessing such offense or offenses, names of witnesses called or to be called to testify against the teacher at said hearing, and whether or not any such charges previously have been brought against the teacher. This provision further requires a hearing, where plaintiff can appear and bring witnesses, as well as the right to compel, by subpoena, the attendance of witnesses on plaintiffs' behalf.

The notice and hearing requirements, and the other procedural aspects of the proposed dismissals are governed by LSA-R.S. 49:950, et seq., the Louisiana Administrative Procedures Act (APA). *Jones v. Southern University and A & M College System Through Bd. of Sup'rs*, 693 So.2d 1265 (La.App. 1 Cir. 1997). In *In Re Dixon, supra*, the Louisiana Court of Appeal also held that all proceedings before an agency are subject to the Louisiana Administrative Procedures Act (APA), La.R.S. 49:950-972, except for those matters "expressly" provided for in the agency organic statute. The Board of Supervisors is undoubtedly a state "agency", and the proposed hearing is an "adjudication" within the meaning of Section 951 of the APA. *Johnson v. Southern University*,

2000-2615 (La.App. 1 Cir. 12/28/01), 803 So.2d 1140; *In Matter of Carline Tank Services, Inc.*, 627 So.2d 669 (La.App. 1 Cir. 1993). As such, the Board's actions, as well as the proposed hearing must comply with APA. In *Muse v. Louisiana State Board of Elementary and Secondary Education*, 2008 WL 4261183 (La.App. 1st Cir. 2/8/2008), the Louisiana First Circuit Court of Appeal held that a teacher is entitled to the benefit of all the procedural protections provided by law even though those procedural protections may arise from different sources of law (e.g. state statute, personnel manual, etc.)

Adequate notice and a fair hearing, limited to the notice provided, was discussed by the court in *Johns v. Jefferson Davis Parish School Bd.*, 154 So.2d 581 (La.App. 1963). The court stated:

> The statutory requirement of formal notice and hearing contemplates a *reasonable and substantial compliance* with the general principle of due process of law, which contemplates that the teacher be given *formal notice of charges* against him made with *sufficient specificity* that he be formally enabled to prepare any defense he may have to these charges; and the principle also reasonably contemplates that the hearing be limited to the formal charges of which the teacher is given notice prior to the hearing, in order that he may have a reasonable opportunity to examine and refute the evidence tendered against him and to raise any legal defense to it which he may have. (emphasis supplied)

*Johns* continued:

> At the outset, we might state that the eleven charges are couched in general language. They do not specify definite acts; neither do they state the number of times the dereliction of duty was committed, nor specify the dates on which infractions occurred. Nothing is itemized on pin pointed.

### *Hearing Date*

The April 8, 2024 hearing date does not satisfy the requirements of due process, because it does provide adequate time or opportunity to investigate these charges against Dr. Salavtore or to prepare for this hearing, especially because LSU-S has refused to provide requested documents,

which are necessary and iimportant tothe plaintiff's due process rights to adequately prepare and effectively assist in his defense.

### ***Access To Records Which Are In The Possession of the Defendants***

Plaintiffs have requested from the University, both informally and under the Louisiana Public Records Law (LSA-R.S. 44:1, et seq.), documents containing facts relevant and necessary to plaintiffs understanding of the "charges", their preparation and effective defense, including cross-examining witnesses with regard to the facts and their credibility.

Article 12, Section 3 of the Louisiana Constitution of 1974 provides that "No person shall be denied the right to examine public documents, except in cases established by law." LSA-R.S. 44:31 provides the right to inspect, copy, or reproduce any public record (44:31B.(1)), as well as the duty of the custodian to provide access to the public records within their control. (LSA-R.S. 44:31A.).

The right of the public to access public records is a fundamental right protected by the constitution and by statute, and such requests must be analyzed liberally in favor of free and unrestricted access. *State v. Mart*, 697 So.2d 1055 (La.App. 1 Cir. 1997). A custodian of public records has a statutory duty to provide immediate access to available records. *Alliance for Affordable Energy v. Frick*, 695 So.2d 1126 (La.App. 4 Cir. 1997). Access to public records may be denied only when the law specifically and unequivocally denies access. *Hilliard v. Litchfield*, 822 So.2d 743 (La.App. 1 Cir. 2002); *State v. Mart, supra*. The custodian has the burden of proving that a public record is not subject to inspection, copying, or reproduction. (44:31B.(3)). Thus, the burden is on the party seeking to prevent disclosure to prove that withholding of a public record is justified. *Hilliard v. Litchfield*, supra; *State v. Mart*, supra.

The Louisiana Public Records Law does not limit access to any of the records sought by the Plaintiffs. (LSA-R.S. 44:11D.) The requested records should be readily available in this proceeding.

### *Preparation for Dismissal Hearing*

Adequate preparation requires that the plaintiff knows the specific details of what he is being charged and that he be afforded the opportunity to inspect and copy relevant LSU documents.

All of these factors concerning the notice, the scheduling of the hearing and LSU-S's refusal to provide necessary documents clearly deny plaintiff due process and a fair, reasonable and legally adequate opportunity to prepare for, present and participate in his defense. Thus, the court should declare that pursuant due process, a fair hearing, and the provisions of LSA-R.S. 44:1, et seq., plaintiff has the right and is entitled to inspect the requested LSU documents.

### *Injunctive Relief*

Plaintiff seeks injunctive relief to prevent irreparable injury and harm to plaintiff's reputations and standing in the academic, scholarly and their professional community, and in the larger community, and to obtain his federal and state due process rights, as well as to enjoin retaliation against him for the exercise of their First Amendment rights, of which the purported sexual harassment charge is a part.

Although injunctive relief is sought against state officials, per *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Eleventh Amendment does not bar declaratory or injunctive relief against such state officers.

Ordinarily, to be granted a preliminary injunction, a plaintiff must also show a substantial threat that he or she will suffer irreparable injury if the injunction is not granted. However, in *Wiggins v. Stone*, 570 F.Supp. 1451 (M.D. La. 1983), this Court, citing *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) and *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49

L.Ed.2d 547 (1976), held that: "[I]t is well established that deprivation of a constitutionally protected right constitutes irreparable injury . . .". Moreover, it bears repeating that the U.S. Supreme Court held in <u>Elrod v. Burns</u>, 427 U.S. 347 (1976): "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."

See also <u>Deerfield Medical Center v. City of Deerfield Beach, et al.</u>, 661 F.2d 328 (5th Cir. 1981).

It is clear that, in the absence of the legally adequate notice, providing specific details of plaintiff's alleged conduct, and without access to the material and necessary LSU records, and the hearing, It is evident that the Defendants are violating plaintiff's rights to fundamental fairness and his federal and state constitutional due process rights, as well as the Louisiana Teacher Tenure Act and the APA. Defendants should therefore be enjoined from proceeding with the proposed dismissal and hearing, and there is a substantial likelihood that plaintiff will prevail on the merits.

Should a showing of irreparable injury be required, plaintiff will certainly suffer irreparable injury and harm if injunctive relief is not granted.

Based on the verified Complaint, and the Declaration of the Plaintiff there is a real and substantial threat of irreparable injury and harm to plaintiff if injunctive relief is not granted to prevent both this miscarriage of justice and the resulting harm to plaintiff's personal and professional reputation.

For all of the reasons stated herein, and in plaintiffs' Complaint, plaintiffs are entitled to and request the relief prayed for.

Respectfully submitted:

**SMITH LAW FIRM**

s/ J. Arthur Smith, III
J. ARTHUR SMITH, III (Bar No. 07730)
830 North Street
Baton Rouge, Louisiana 70802
Telephone: (225) 383-7716
Fax: (225) 383-7773
E-mail: jasmith@jarthursmith.com

*Attorney for Plaintiff, Brian Salvatore*


 *s/ Mike Jefferson*
 **MICHAEL J. JEFFERSON**
ATTORNEY AT LAW
La. Bar Roll No. 22430
P.O. Box 1906
Baton Rouge, LA 70821-1906
mjefferson@mjjefferson.com

 *Attorney for Plaintiff*
 *Dr. Brian Salvatore*

- 12 -